IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUPERMEDIA LLC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARTIN MORLEY | : | NO. 13-176 |
| | : | (Consolidated)_____ |

| | | |
|---|---|---|
| SUPERMEDIA LLC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AFFORDABLE ELECTRIC, INC. | : | NO. 12-2329 |

MEMORANDUM

Dalzell, J.                                                    October 8, 2014

        In this Dickensian breach of contract suit, SuperMedia LLC ("SuperMedia") seeks

payment for directory advertisements that Affordable Electric, Inc. ("AEI") contends were

placed without its consent.  On July 9, 2014 the parties stipulated to dismissal of the companion

case between SuperMedia and Martin Morley, AEI's principal.[1]  Remaining before us are cross-

motions for summary judgment, AEI's motion for expedited discovery and SuperMedia's motion

to strike AEI's untimely expert report and for leave to file a sur-reply in response to AEI's

opposition to its motion to strike.

        For the reasons detailed below, we will deny AEI's motion for summary judgment and its

motion for expedited discovery.  We will grant in part SuperMedia's motion for summary

judgment, and grant its motions to file a sur-reply and to strike AEI's late-filed expert report.

---

[1] AEI and Martin Morley were third-party plaintiffs and SuperMedia and two of its employees
were third-party defendants in Civil Action No. 13-176.  On March 13, 2013, six days after filing
the third-party complaint, the third-party plaintiffs voluntarily dismissed their suit against
SuperMedia.  The named individuals were never served.

## I.    <u>Factual and Procedural History</u>

The parties find little common ground in this contentious litigation, now in its third year.

SuperMedia alleges that, as the successor to businesses known variously as Idearc Media LLC, Idearc Media Corp. and Verizon Directories Corp., it had a longstanding directory advertising relationship with AEI, which maintained three accounts with SuperMedia.  Cmplt. at ¶¶ 1, 12, 13.  SuperMedia contends that AEI owes it an aggregate $118,162.35[2] in unpaid fees and interest under contracts executed in 2007 and 2008 by AEI's president and sole shareholder, Martin Morley ("Morley").  <u>Id.</u> ¶¶ 10, 14, 32.  The contracts are governed by Texas law and provide for interest on unpaid balances to accrue at 18% annually.  Pl. SOF at ¶ 10.  The contracts allow publications in the directories without pre-approval unless AEI submitted changes prior to certain deadlines.  <u>Id.</u> at ¶ 11.  SuperMedia contends that AEI has produced no documents to show it communicated any pre-publication changes for publications under the 2007 contract.  <u>Id.</u> at ¶ 14.  AEI made payments on the 2008 contract through January 16, 2009 (without objecting, as Morley later would, that his signature was forged), but made no other payment.  <u>Id.</u> at ¶ 16.  On April 30, 2012 SuperMedia sued AEI, alleging a single count of breach of contract and seeking the unpaid fees plus late charges and interest accruing under the contract terms.  Cmplt. at ¶¶ 35-42.

AEI and Morley respond that AEI dealt exclusively with an entity called Idearc Media Corp. ("Idearc") to place advertisements in Yellow Pages directories.  Def. SOF at ¶ 7.  AEI contends it did not approve the ad it was shown in 2007[3] and did not approve any 2008 publication.  <u>Id.</u> at ¶ 9.  AEI also contends the advertising sales personnel represented to it that

---

[2] We note that the three allegedly deficient accounts total $118,162.36.
[3] It has conceded the validity of the 2007 contract in its Supplemental Response ("There is a written contract in 2007, which AEI was agreeable to[.]").  <u>See</u> Pl. MSJ Ex. G.

no ad would be published without Morley's approval.  Id. at ¶ 12.  It states that the 2008 ad falsely described AEI as a member of the Better Business Bureau ("BBB"), though it was not a BBB member in either 2007 or 2008.  Id. at ¶¶ 17-18.  Despite instructions to fix or remove the 2008 ad, Idearc did not do so.  Id. at ¶ 20.   AEI and Morley assert that publication of this erroneous information, potentially confusing to the public, renders the contract illegal.  Id. at ¶¶ 23-24.  In addition, AEI and Morley claim that they did not contract with SuperMedia Inc. or SuperMedia LLC in 2008 or with Idearc Media Inc. in 2008 for a 2009 advertisement or with Idearc LLC in 2007 or 2008.  Id. at ¶ 27.  Morley claims he learned of the 2008 contract when a $30,000 charge appeared on his personal American Express® card statement,[4] which he contested with American Express® and SuperMedia.  Id. at ¶¶ 29-30.  Morley denies that the signature on the 2008 contract was his.  Id. at ¶¶ 26, 31.  He states he asked for the original or a copy of the contract in order to submit the signature to analysis, but received neither because, he alleges, SuperMedia destroyed the original.  Id. at ¶¶ 32, 34.  AEI argues that SuperMedia, which emerged from Idearc, Inc.'s Chapter 11 bankruptcy proceeding, assumed only the contracts that belonged to Idearc Media Inc., and not those of Idearc Corp.  Id. at ¶¶ 59, 61.  Therefore, AEI argues, SuperMedia may not sue it for contracts entered into by Idearc Corp.  Id. at ¶ 62.

On December 11, 2012 we denied AEI's motion to dismiss.  On January 7, 2013, we ordered the parties to conclude discovery by March 1, 2013 in anticipation of arbitration.  Three days later, SuperMedia sued Morley because AEI contended in its answer to SuperMedia's complaint that Morley lacked the capacity to "enter into or bind the corporation to a contract."

---

[4] Morley is litigating his American Express® claim in the Court of Common Pleas in Philadelphia County and in Bucks County, and has sued Idearc Media Corp and SuperMedia LLC in the Bucks County litigation.  Def. SOF at ¶ 38.

Ans. at 6.[5]  We then consolidated the two actions on January 23, 2013.  Amid discovery

squabbles, Morley and AEI sought to enforce the arbitration clause in the contract whose validity

they contested and on September 5, 2013 we denied their motions and resolved the parties'

discovery disputes.  Morley and AEI timely appealed our denial of their motions to enforce the

contract's arbitration clause and we stayed the present proceedings pending the appeal.

On April 30, 2014, our Court of Appeals affirmed our denial of defendants' motions to

enforce the arbitration clause.  <u>SuperMedia v. Affordable Electric, Inc.</u>, 565 F.App'x 146 (2014).

On June 18, 2014, a week after our scheduling order limiting discovery and setting July 14, 2014

as the deadline for dispositive motions,  AEI moved to expedite response time for plaintiff to

answer defendants' interrogatories.[6]  On June 23, 2014, SuperMedia moved to compel

production and impose sanctions.  On July 9, 2014, the parties stipulated to dismiss

SuperMedia's complaint against Morley without prejudice to its reinstatement should AEI seek

to introduce any evidence of Morley's purported psychiatric disability "in any respect whether in

support of or in defense of the parties' prospective cross motions for summary judgment, and/or

in defense of the collection action at arbitration or trial."  Stip. at ¶ 2.  Under the stipulation,

SuperMedia also advised the Court that its motions to compel and for sanctions were moot as it

received the discovery to which it was entitled.  <u>Id.</u> at ¶¶ 3-4.

We now resolve the remaining motions.


II.   <u>**Standard of Review**</u>

1.   <u>**Summary Judgment**</u>

Summary judgment is appropriate if there are no genuine issues of material fact and the

---

[5] This was the thirty-seventh of sixty-two affirmative defenses AEI asserted.

[6] AEI simultaneously complained that our deadline was too short.  SuperMedia states that AEI
served seven prior sets of interrogatories.  Pl. Reply in support of MSJ at 6 n.6.

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party moving

for summary judgment bears the burden of proving no genuine issue of material fact exists.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10 (1986).   To that end,

the movant must inform the district court of the basis for its argument by "identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue

of material fact," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   Where the movant is the

defendant or the party that does not have the burden of proof on the underlying claim, it "has no

obligation to produce evidence negating its opponent's case," National State Bank v. Federal

Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992).  The movant need only point to

the lack of evidence supporting the non-movant's claim.  Id.

        When both parties move for summary judgment, our task is no different.  As our Court of

Appeals has cautioned,

> Cross-motions are no more than a claim by each side that it alone
> is entitled to summary judgment, and the making of such
> inherently contradictory claims does not constitute an agreement
> that if one is rejected the other is necessarily justified or that the
> losing party waives judicial consideration and determination
> whether genuine issues of material fact exist. If any such issue
> exists it must be disposed of by a plenary trial and not on summary
> judgment.

Rains v. Cascade Industries, Inc., 402 F.2d 241, 245 (3d Cir. 1968).  Cross-motions must be

considered separately and should not be interpreted necessarily to mean that judgment should be

entered on either one of them.  Each party, as a movant for summary judgment, bears the burden

of establishing that no genuine issue of material fact exists and that he is entitled to a judgment

as a matter of law.  10A Charles Alan Wright and Arthur R. Miller, Federal Practice &

Procedure, §2720 (3d ed. 2014).  As in any summary judgment motion, the determination

whether a genuine issue concerning a material fact exists is itself a question of law that the Court must decide.  It does not depend upon what either or both of the parties may have thought about the matter.  A party moving for summary judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for purposes of his own motion.  Id.  As Wright and Miller observe, "It follows that the legal theories the movant advances in support of a Rule 56 motion and the assertion that there is no issue of material fact may not be used against the movant when the court rules on his adversary's motion."  Id.

It is well-established that Rule 56 obliges the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex, 477 U.S. at 324; see also Fed. R. Civ. P. 56(c).  The nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).  To prevail on a motion for summary judgment, "the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-movant].' " S.H. ex rel. Durrell v. Lower Merion School Dist., 729 F.3d 248, 256 (3d Cir. 2013) (quoting Anderson, 477 U.S. at 252) (internal citation omitted).

The reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 538 (3d Cir. 2006).   A factual dispute is "genuine" if it turns on "evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  A fact is "material" if it "might affect the outcome of the suit under the governing law."  Id. at 248.  That is, "only disputes over facts that might affect the outcome

6

of the suit under the governing law will properly preclude" summary judgment.  Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 248).

Because we consider cross-motions before us, "[t]he fact that one party fails to satisfy that burden on his own Rule 56 motion does not automatically indicate that the opposing party has satisfied his burden and should be granted summary judgment on the other motion."  10A Wright & Miller at §2720.  Both motions must be denied if we find there is a genuine issue of material fact, but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court may render judgment.  Id.

If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, the moving party is entitled to judgment as a matter of law.  See Celotex, 477 U.S. at 322.  Specifically, Rule 56(e) provides in relevant part that "[i]f a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it."  Fed. R. Civ. P. 56(e).

### 2.   **Motion To Strike**

Before us is also SuperMedia's motion to strike AEI's untimely expert report.  Fed. R. Civ. P. 26(a)(2) governs expert testimony disclosure and requires a party to disclose the identity of any witness it may use at trial to present evidence.  This disclosure "must be accompanied by a written report. . . if the witness is one retained or specially employed to provide expert testimony in the case."  Id. at (a)(2)(B).  "A party must make these disclosures at the times . . . the court orders."  Id. at (a)(2)(D).  We may impose sanctions if a party does not comply with

these disclosure requirements.  Fed. R. Civ. P. 37(c)(1).  Specifically, "[i]f a party fails to provide information. . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a  motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Id.  Sanctions may include payment of "the reasonable expenses, including attorney's fees, caused by the failure", or striking the pleadings in whole or in part.  Id. at (c)(1)(A) and (C).   "The imposition of sanctions for abuse of discovery under [Rule 37] is a matter within the discretion of the trial court."  Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 156 (3d Cir. 1995) (internal citation omitted).

Our Court of Appeals has held that, prior to excluding evidence, we must consider: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation. Nicholas v. Pennsylvania State University, 227 F.3d 133, 148 (3d Cir. 2000).  Further, "the importance of the excluded testimony should be considered."  Konstantopoulos v. Westvaco Corp.. 112 F.3d 710, 719 (3d Cir. 1997) (internal citation and quotation marks omitted).

### III.  Discussion

#### 1.    AEI's Motions

We turn first to AEI's June 18, 2014 motion to expedite discovery in which AEI contends that the discovery schedule we set in our June 11, 2014 Order was too short and that it disadvantaged AEI in relation to SuperMedia.

We will deny this disingenuous motion.  A quick glance at the docket reveals that we issued our first discovery order in January of 2013.  The parties engaged in vigorous, if

8

acrimonious, discovery for eight months thereafter, culminating in discovery disputes we resolved in our September 5, 2013 Order directing both parties to behave themselves and exchange the required pretrial discovery under the Federal Rules of Civil Procedure.  It is well-established that parties have an ongoing duty to supplement disclosures under Fed. R. Civ. P. 26(e).  See, e.g., Reith v. Trevi Icos Corp., 2013 WL 5574467 (E.D.Pa. Oct. 9, 2013) (Jones, J.). In short, discovery in this matter has been ongoing for a very long time, interrupted only by defendants' appeal, which stayed this proceeding.  Further, Rule 26, with which AEI liberally seasons its motion, requires parties to act without awaiting a discovery request or court order. Fed. R. Civ. P. 26(a)(1)(A).  They must each provide information on all individuals with discoverable information, documents supporting claims and defenses, computations of damages, and relevant insurance agreements.  Id.  There is no question that AEI has had ample time to seek discovery -- and, in fact, the docket demonstrates it has done so.

What's more, SuperMedia's opposition to this motion includes its efforts to comply with our September 5, 2013 Order and correspondence attesting to AEI's persistent discovery deficiencies.  See Pl. Resp. in Opp. at Exs. J, K, L, M, and S.  Our September 5, 2013 Order directed the parties to resolve any discovery disputes among themselves.  SuperMedia's response suggests that it tried to do so.  As its motion makes clear, AEI has not.  See, e.g., Pl. Opp. Ex. S.

In our September 5, 2013 Order, we reminded the parties that we may impose sanctions under Rule 37 at our discretion when parties fail to meet the minimum standards of conduct. Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 73 (3d Cir. 1994); Newman, 60 F.3d at 156.  Rule 37 provides that when a party fails to comply with a court order to provide or permit discovery, we may impose the following sanctions:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).  In view of AEI's manifest failure to comply in good faith with our September 5, 2013 Order, we will sanction AEI by striking this motion and ordering it to show cause by October 14, 2014 why we should not permit SuperMedia to recover the costs associated with defending this patently frivolous motion.

We turn next to AEI's motion for summary judgment, which raises seven reasons why we should grant that motion.[7]  AEI argues that we should do so because: (1) we do not have subject-matter jurisdiction as SuperMedia did not assume any contracts held by the entity with which AEI contracted, and therefore SuperMedia and AEI are not in privity of contract, Mem. of Law at 5; (2) we lack subject-matter jurisdiction because the bankruptcy court that oversaw Idearc Inc.'s Chapter 11 bankruptcy retains exclusive jurisdiction, id. at 6-8; (3) we lack subject-matter jurisdiction because SuperMedia's claims fall below the statutory $75,000 threshold pursuant to 28 U.S.C. § 1332, id. at 9; (4) SuperMedia destroyed the original contract and should therefore be sanctioned with dismissal of its complaint for this alleged spoliation, id. at 10-11; (5) the statute of limitations has run on these claims under Texas law, id. at 16-18; (6) SuperMedia's claims are barred by the doctrines of accord and satisfaction and set-off, id. at 20-

---

[7] The defendant submitted an <u>unpaginated</u>, <u>untabbed</u> 864-page copy of its motion to Chambers -- which may comply with the letter of this Court's requirement for a courtesy copy, but certainly not its manifest intent.

22; and (7) the contracts are illegal under Pennsylvania law, id. at 22-24.[8]

AEI bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law.  SuperMedia bears the burden of going beyond the pleadings to identify specific facts to show there is a genuine issue for trial.  For the reasons stated below, we agree with SuperMedia that AEI cannot show that it is entitled to summary judgment as a matter of law.  Indeed, we find again and again that AEI's representations to the Court are contradicted by its own exhibits and supporting materials.

In support of its contention that SuperMedia is not in privity with the disputed  contracts, AEI cites its own affirmative defenses and misreads the Idearc entities' first amended joint plan of reorganization.  Def. Mem. of Law at 4 and Ex. A Pt. 41 et seq.  As the Idearc entities' plan of reorganization makes clear, id. at Pt. 41 et seq., each debtor as defined in the plan "shall be deemed to have assumed such contracts. . . to which it is a party unless. . . rejected upon motion by a Final Order."  Id. at Pt. 60 (pg. 27 of Plan of Reorg.).  AEI offers no evidence that any of the disputed contracts were rejected by a Final Order of the Bankruptcy Court.  Further, as SuperMedia states, "it is unquestionable that Idearc Media Corp. reorganized itself as a limited liability company, Idearc Media LLC, prior to entering bankruptcy, and underwent a post bankruptcy name change to SuperMedia LLC."  Pl. Mem. in Opp. at 5.  See Delaware Secretary of State certification showing the Idearc-SuperMedia name change, Def. MSJ, Ex. A, pt. 40 at 10, 13 (listing the prior names and post-bankruptcy names of each Idearc and SuperMedia entity); see also id. pt. 41 at 4 (corporate structure of the former Idearc, now SuperMedia entity).  As SuperMedia identifies specific facts in the record that show AEI is not entitled to summary judgment as a matter of law, we will deny AEI's motion on this ground.

---

[8] AEI also raises arguments on Morley's behalf, but as the parties stipulated in July of 2014 to dismiss the case against him, we need not unspool these arguments.

As to AEI's second argument -- that the Bankruptcy Court retains jurisdiction over this dispute -- we agree with SuperMedia that it does not.  AEI palpably misunderstands our Court of Appeals's teaching in In re Resorts Intern., Inc., 372 F.3d 154, 166-67 (3d Cir. 2004).  In Resorts, the trustee for the Litigation Trust to which the debtor assigned certain rights brought a claim against the Trust's accounting firm for professional malpractice and breach of contract in connection with services performed for the Trust.  Id. at 156-57.  The accounting firm argued that the Trust was a legally distinct entity that was not a continuation of the bankruptcy estate for jurisdictional purposes and our Court of Appeals agreed.  Id. at 157.  Our Court of Appeals reviewed the jurisdictional test established in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), which determined that "bankruptcy courts have jurisdiction to hear a proceeding if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.' " Resorts, 372 F.3d at 164 (quoting Pacor, 743 F.2d at 994).  It is well-established that the bankruptcy court retains post-confirmation jurisdiction on matters "related to" the bankruptcy proceeding only where there is a "logical possibility that the estate will be affected."  Id. at 165 (internal citation omitted).  As a general rule, "it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred."  Id.  Our Court of Appeals held that "the essential inquiry" is "whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter."  Id. at 166-67.

Here, there is no nexus between this dispute and the bankruptcy proceeding.  SuperMedia filed suit in April of 2012 to recover advertising fees -- more than two years after the predecessor entity emerged from bankruptcy and the debtor's estate ceased to exist.  See Def. MSJ, Ex. A, pt. 41 et seq. at 11 (First Amended Joint Plan of Reorganization of Idearc Inc. et al., Debtors dated

December 21, 2009).  We note that, once again, AEI's summary judgment exhibits are at odds with the litigation position it stakes out.

AEI next argues that SuperMedia's claim falls below the $75,000 statutory threshold for diversity cases pursuant to 28 U.S.C. §1332(a).  In support of this contention, it without evident embarrassment or proof claims that SuperMedia wrote off the balance due, which AEI puts at $109,650.26.  Def. MSJ Ex. A at 357, 287.  SuperMedia disputes both the calculation and the conclusion, and offers its exhibits showing the amounts outstanding.  Pl. MSJ Ex. P (affidavit of Jacci Abbett, analyst—Legal Collections, and detailed reports for three accounts held by AEI, as identified in the complaint).

As a general rule, the amount of controversy is determined by the good faith allegations appearing on the face of the complaint in this case:  unpaid balances of $109,650.26 in account No. 260000078514; $1,142.36 in account No. 290001046164; and $7,369.74 in account No. 290001046165, totaling $118,162.36.  Cmplt. at ¶¶ 24, 27 and 29; see also St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288 (1938).  The complaint satisfies the required amount in controversy unless the defendant can show to a legal certainty that the plaintiff cannot recover that amount.  Id. at 289.  AEI has failed to show to a legal certainty that SuperMedia cannot recover the full amount it alleges it is due, and SuperMedia has gone beyond the pleadings to identify specific facts to show there is a genuine issue for trial.  Therefore, we cannot grant AEI summary judgment on this ground.

We turn next to AEI's spoliation claim.  It is undisputed that in the ordinary course of business SuperMedia creates images of each contract accessible by all internal departments, after which it destroys the original.  SuperMedia's corporate representative explained its process in her deposition:

Q:    So in this next scenario, the representative meets with the client and turns in a document with his signature on it.

A:    Uh-uh.

Q:    Your team of people, six and you, simply look to see if the documents are signed. If they are, they pass your review, correct?

A:    For that particular audit point. We had -- I'm trying to think how many we had in 2006.  Our audit point has been as high as 68 different points that we look at.

….

Q:    The next step, what happens then?

A:    So we have gone through all our audit points I think is where you want me to go.

Q:    Yes.

A:    We have gone through all our audit points. We say we have everything we need.  Everything is keyed.  We're good to go.  We send this down to our account management center, which is, for us, in [St.] Petersburg, Florida, where they do additional checks.  And once that's done, they then image those contracts. . . .  So once that is done, they close out everything.  The sales rep will then be paid.  At the same time we image all the documents. And then we destroy the originals.  But these go into an electronic imaging system.

Q:    How much time has passed from the original paper document going up and then finally being put into electronic form and destroyed?

A:    An error-free, where we really didn't find anything wrong and there's no special circumstance within our divisions, typically, 72, 96 hours.

Q:    So after 96 hours, if a client calls and says I didn't sign the contract, you couldn't produce the contract?

A:    It's in our imaging system.

Q:    Aside from a copy, you couldn't produce the original for original signature?

A:    No. We destroy those.

Def. MSJ, Ex D at 58:13-62:11.

AEI contends that, under <u>Zubulake v. UBS Warburg LLC, et al.</u>, 229 F.R.D. 422

(S.D.N.Y. 2004), SuperMedia was on notice to preserve the original when Morley called it

seeking a copy of the disputed 2008 contract and it should also have preserved the tape of

Morley's February 2009 telephone call disputing the $30,000 charge on his personal American

Express® card.  Def. Mem. of Law at 10-11.  AEI urges us to impose sanctions by entering

judgment against SuperMedia and for AEI.  <u>Id.</u>

SuperMedia responds that AEI's reliance on Zubulake is misplaced.  We agree.

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve

property for another's use as evidence in pending or reasonably foreseeable litigation."

Zubulake, 229 F.R.D. at 430 (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779

(2d Cir. 1999).   Clearly no litigation was pending or even foreseeable when the originals were

destroyed within four days of the contract signing in 2007 and 2008 -- as described in the

uncontroverted testimony of the SuperMedia corporate representative.  That was well before the

period in early 2009 when AEI contends that Morley supposedly learned of the allegedly forged

2008 contract.  Def. SOF ¶ 29.  AEI can show no spoliation, let alone any failure to preserve

property giving rise to sanctions.  Nor does AEI bother to cite any case supporting its contention

that spoliation-related sanctions should warrant a grant of summary judgment.  Its eleventh-hour

argument that SuperMedia did not disclose any document retention policy, Def. Reply Br. at 1-3,

does nothing to bolster its argument that we should grant its motion.  We will therefore deny

AEI's motion on this ground as well.

We turn next to AEI's claim that under Texas law the statute of limitations has run on

these claims.  Because the running of a statute of limitations is an affirmative defense, Fed. R.

Civ. P. 8(c)(1), "[p]arties are generally required to assert [them] early in litigation, so they may

be ruled upon, prejudice may be avoided, and judicial resources may be conserved."  Robinson

v. Johnson, 313 F.3d 128, 134 (3d Cir. 2002).  Nonetheless, AEI cannot prevail here.  The statute

of limitations for a contract action in Texas is four years.  Tex. Civ. Prac. & Rem Code Ann. §

16.051.  A claim accrues when the contract is breached.  Barker v. Eckman, 213 S.W. 3d 306,

311 (Tex. 2006).  AEI contends that Morley told Idearc and SuperMedia in 2008 and 2009 that

the signature on the 2008 contract was a forgery, Mem. of Law at 17, but provides nothing more

than his say-so in support.  SuperMedia, on the other hand, produced internal records showing

that AEI continued to make payments into 2009, less than four years before the instigation of this

suit on April 30, 2012.  Def. MSJ, Ex. A at 356.[9]  Because SuperMedia raises a genuine issue of

material fact as to the running of the statute of limitations on its claim, we will deny AEI's

motion on this basis as well.

    AEI also contends that we should grant summary judgment under the doctrine of accord

and satisfaction and set-off.  AEI's argument distills to this: in return for not suing SuperMedia

over the alleged publication error, SuperMedia "set off" the amount owed and "accord and

satisfaction was reached" between the parties.  Def. Mem. of Law at 21.  AEI points to

SuperMedia's internal correspondence in which a SuperMedia fraud analyst states "believe we

just wrote him off for over $110K" as well as ledger entries for two of the accounts at issue that

AEI contends show a near-zero balance.  Id. at 22, and Ex. A at 287, 344-357.  SuperMedia

counters that nothing in the record supports a set-off with AEI, the plan of reorganization blocks

any set-offs that do not comply with the provisions of the plan or the Bankruptcy Court's order,

and that any internal write-off does not reflect accord and satisfaction.  We agree.

    Under Texas law, an accord and satisfaction occurs when a person in good faith tenders

an instrument to the claimant as full satisfaction of the claim, the amount of the claim is

unliquidated or subject to a bona fide dispute, and the claimant obtains payment of the

instrument.  See Tex. Bus. & Com. Code Ann. § 3.311(a).  A "claim is discharged if the person

against whom the claim is asserted proves that the instrument or an accompanying written

communication contained a conspicuous statement to the effect that the instrument was tendered

as full satisfaction of the claim."  Id. at § 3.311(b).  The defense of accord and satisfaction "rests

---

[9] Again, AEI's own exhibits belie its legal claims.

upon a new contract, express or implied, in which the parties agree to the discharge of the

existing obligation by means of the lesser payment tendered and accepted."  Jenkins v. Henry C.

Beck Co., 449 S.W.2d 454, 455 (Tex. 1969) (internal citation omitted).

> As the Texas Supreme Court put it,
>
> The evidence must establish an assent of the parties to an
> agreement that the amount paid by the debtor to the creditor was in
> full satisfaction of the entire claim. The minds must meet and
> where resting in implication the facts proved must irresistibly point
> to such conclusion. There must be an unmistakable communication
> to the creditor that tender of the lesser sum is upon the condition
> that acceptance will constitute satisfaction of the underlying
> obligation. It has been said that the conditions must be made plain,
> definite and certain; that the statement accompanying the tender of
> a sum less than the contract price must be so clear, full and explicit
> that it is not susceptible of any other interpretation; that the offer
> must be accompanied with acts and declarations which the creditor
> is "bound to understand."

Id. (internal citations omitted).

It is perhaps unsurprising that AEI offers nothing to substantiate a specific representation

that anything was tendered as full satisfaction of the claim.  It is also worth noting that AEI's

own exhibits show a $109,650.26 balance due on a single advertising account as of December of

2008.  Def. MSJ Ex. A at 348.  Its misguided insistence that an internal SuperMedia write-off --

for which AEI presents no proof -- is tantamount to accord and satisfaction, Def. Reply Br. at 4-

6, is unsupported under Texas law.  "[W]ithout additional consideration, a debtor's part-payment

of a liquidated debt does not constitute an accord and satisfaction, even if the creditor and debtor

agree that the debt is thereby discharged," -- is emphatically not the case here, Long v. Turner,

134 F.3d 312, 316 (5th Cir. 1998) (construing Texas law).  "[A] write-off of a debt on the

creditor's books is an accounting practice that does not of itself amount to a discharge or release

of the debt."  Id.  Again, because SuperMedia raises a genuine issue of material fact as to the

existence of <u>any</u> agreement showing its claim is satisfied, in whole or in part, we deny AEI's motion on this ground.

Finally, we turn to AEI's last claim -- that the contracts are unenforceable under Pennsylvania law because certain ad copy included erroneous information about AEI's membership in the BBB.  Def. Mem. of Law at 23.  SuperMedia disputes AEI's disavowal of the advertising copy, pointing to records it contends show that Morley signed off on the advertising copy.  <u>See</u> Pl. MSJ at Ex. T.  Its contract terms also provide that the advertiser is responsible for the copy.  Cmplt. Ex D.

We also deny AEI's motion on this ground.  It can point to no pleadings, depositions, answers to interrogatories, admissions on file, or affidavits (besides Morley's own statement) that it disputed the advertising copy.  Further, it is well-established that once the Court adopts a choice of law rule, as we did here, choice of law is settled under the "law of the case" doctrine and will not be revisited absent extraordinary circumstances.  <u>Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.</u>, 123 F.3d 111, 116 (3d Cir. 1997).  It is undisputed by both parties that Texas law governs as we held in our December 11, 2012 Order denying AEI's motion to dismiss.  AEI offers no evidence of extraordinary circumstances to support its odd contention that Pennsylvania law should now apply.

For the reasons stated above, we will deny AEI's motion for summary judgment.

### 2.     **SuperMedia's Motions**

We turn first to SuperMedia's motion to strike AEI's untimely expert testimony.  The authenticity of Morley's signature on the 2008 contract is at issue.  For its part, SuperMedia hired a handwriting expert to review all imaged documents in its files, timely disclosed this expert testimony, and included the report and required disclosures in its motion for summary

judgment.  Pl. MSJ Ex. S and T.  AEI did not include any expert testimony in its motion for summary judgment.  <u>See</u> Def. MSJ.  Instead, on July 3, 2014, the day we ordered discovery completed, AEI's counsel informed SuperMedia's counsel by fax that "[n]o report [was] obtained from" its expert, J. Wright Leonard.  Pl. MSJ Ex. S.  Despite this averment from AEI's counsel, AEI included a letter and report from Leonard dated June 28, 2014 in its July 28, 2014 response to SuperMedia's motion for summary judgment.  This is the report that SuperMedia seeks to strike.

Unquestionably, AEI's inclusion of its expert opinion dated <u>five days before</u> its attorney's assertion that no such report exists lends itself to a strong inference of fraud upon the court.  Equally to the point, SuperMedia contends, this after-the-fact filing tucked untimely into a responsive filing violates both the spirit and the letter of the Federal Rules of Civil Procedure, as neither the report nor the business documents on which it purports to rely were timely produced as the Federal Rules require.  Pl. Mem. of Law at 3; <u>see</u> <u>also</u> Fed. R. Civ. P. 26(a)(2)(B).

As is well-established, Fed. R. Civ. P. 26(a)(2)(B) requires parties to disclose the identity of experts, accompanied by a written expert report that includes "the facts or data considered by the witness in forming [the opinions]."  Fed. R. Civ. P. 26(a)(2)(B)(ii).  The deadline for all such disclosures here was July 3, 2014.  SuperMedia objects that it received neither AEI's expert report nor any underlying material on which AEI's expert purported to rely by that date.  AEI seeks to stir the dust by contending that SuperMedia failed to disclose the trial history of its own expert pursuant to Rule 26 and cross-moves to strike because it has been prejudiced thereby.  Def. Opp. to Mtn. to Strike at 3, 5-6; <u>see</u> <u>also</u> Reply Memorandum.  AEI then contends that it is offering its expert as a rebuttal expert.  <u>Id.</u>

These insincere and post hoc arguments are unavailing.[10]  As is plainly evident in the court filings, SuperMedia disclosed its expert's trial experience, as required, in its motion for summary judgment.  Pl. MSJ Ex. U.  And, unfortunately for AEI, our Order did not provide for rebuttal experts -- and, even had it done so, AEI would still have been in violation of its Rule 26 disclosure requirements, as explained above.  AEI's counter-motion is therefore denied.

Before we can strike AEI's untimely expert report, we must consider: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.  Nicholas v. Pennsylvania State University, 227 F.3d 133, 148 (3d Cir. 2000).

We find that SuperMedia would be prejudiced by the admission of this back-dated report, being without the benefit of the underlying supporting documents or having an opportunity to examine the expert.  Further, it had no time to respond as AEI sprang its expert more than three weeks after the close of discovery.  Worst of all, AEI has shown both bad faith and willful noncompliance with our Order setting a discovery deadline and its obligations under the Federal Rules.[11]

AEI's failure to supply the underlying documents, alone, exposes it to sanctions under Rule 37, which provides that "[i]f a party fails to provide information. . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a  motion,

_____

[10] In response, SuperMedia seeks our leave to file a sur-reply to address AEI's contention that it did not serve its expert's trial experience.  It disclosed this information by letter on July 3, 2014. See Pl. MSJ Ex. U. We will grant SuperMedia leave to file.

[11] As to the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court, such disruption would be negligible.

at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R.

Civ. P. 37(c)(1).  Sanctions under Rule 37 include payment of "the reasonable expenses,

including attorney's fees, caused by the failure to provide information or identify a witness" or

striking the pleadings in whole or in part.  Fed. R. Civ. P. 37(c)(1)(A) and (C).   "The imposition

of sanctions for abuse of discovery under [Rule 37] is a matter within the discretion of the trial

court."  Newman, 60 F.3d at 156.

  We will therefore strike AEI's putative expert report as untimely.  AEI may not use or in

any way rely on the contents of this report at trial.  Further, as we cannot permit parties to submit

apparently back-dated documents to their adversaries and the Court, by October 14, 2014, AEI

shall show cause why it should not pay all costs SuperMedia incurred to file and litigate this

motion.  By the same date, J. Wright Leonard shall separately explain to the Court by affidavit

the circumstances under which she submitted the June 28, 2014 letter and report.

  We turn next to SuperMedia's motion for summary judgment on its breach of contract

claim.  SuperMedia contends that there is no material dispute about the 2007 and 2008 contracts.

Pl. Mem. of Law at 6.  As AEI's responses to interrogatories makes clear, AEI does not contest

the validity of Morley's signature on the 2007 contract, id. at 7; see also Pl.'s MSJ Ex. G ("There

is a written contract in 2007, which AEI was agreeable to[.]").  SuperMedia's contract makes the

advertiser responsible for cancellations and revisions, Pl. Mem. of Law at 7.  Specifically, the

contract provides that it is the advertiser's "responsibility to review any [a]dvertising [c]opy

prior to [p]ublisher's deadlines."  Pl.'s MSJ Ex. J at Section 4(a).  The contract also provides that

> Publisher may provide [advertiser] with proofs of new display
> advertisements for review.  [Advertiser] may correct inaccuracies
> in these proofs up to the deadline set by [p]ublisher.  Publisher
> may require that [advertiser] sign a proof sheet to approve [its]
> advertising before publishing the advertising.  However,
> [p]ublisher may publish [his] advertising without approval of such

proof sheet.

Id. at Section 16.  It further provides that the publisher "does not warrant that the advertising will be published without error or omission."  Id. at Section 20.  Advertising automatically renews under the contract unless the publisher receives written notice and any revisions or cancellation must be in writing and received before the close date of the subsequent issue.  Id. at Section 28 and 29.

SuperMedia provides its contract, the February 8 and 27, 2007 copy layouts that Morley executed, and the advertising copy published in conformity with those approved layouts.    Pl. MSJ Ex. N and T.[12]  AEI offers no documentation showing that Morley or AEI communicated any errors to change pursuant to that contract, either before or after the expiration of the period required under the contract's terms and conditions.  Id. at 8 and Ex. K.

Instead, AEI reasserts the arguments it vainly pressed in its motion for summary judgment.  It (1) contends that SuperMedia is not in privity with the entity AEI contracted with, (2) contests our jurisdiction in favor of the Bankruptcy Court, and (3) asserts that the erroneous inclusion of the BBB endorsements renders the contract unenforceable under Pennsylvania law.  Def. Opp. at 3-5.  As we explained above, the record shows that SuperMedia is the successor entity to AEI's counterparty.  Because there is no nexus between this litigation and the bankruptcy, the bankruptcy court lacks jurisdiction here and Pennsylvania law simply does not apply.

More to the point, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude" summary judgment.  Anderson, 477 U.S. at 248.  AEI's arguments do not address the law governing this plain vanilla breach of contract suit nor

---

[12] The copy layouts are appended to the handwriting expert's report at exhibit T.

do they contest material facts.  AEI produced no documents showing the amount SuperMedia claimed it is owed had been paid and, indeed, offered nothing besides its ipse dixit that Morley contested the content of the advertisements (itself insufficient to preclude payment under the terms of the contract).  It offers no affirmative evidence to contradict SuperMedia about the validity of the 2007 contract.  As AEI has failed to properly address SuperMedia's assertions of fact as required by Rule 56(c), we consider the facts concerning the 2007 contract undisputed for purposes of SuperMedia's motion.  We will grant SuperMedia partial summary judgment as to the 2007 contract.[13]

AEI also seeks to reopen discovery in order to get SuperMedia's document retention policy and depose a corporate representative -- as it has already done.  Id. at 7-8.  We are obliged to give all parties an adequate opportunity for discovery before ruling on summary judgment motions.  See Celotex, 477 U.S. at 322.  When a nonmovant shows by affidavit or declaration that it cannot present specific facts to justify its opposition to the motion, we may allow additional time for discovery.  Fed. R. Civ. P. 56(d)(2).

Here, the parties began discovery in January of 2013.  In that time AEI has served seven sets of written interrogatories on SuperMedia.  Pl. Reply at 6 n.6.  It also opted in September of 2013 not to execute SuperMedia's confidentiality agreement that would have given it access to the document retention policy it now seeks.  Id. Ex. Y at 35-39 (September 11, 2013 letter from SuperMedia enclosing objections and responses to two sets of interrogatories and the confidentiality agreement).  SuperMedia argues that the discovery AEI now claims it needs to

---

[13] SuperMedia states in its motion for summary judgment that the amount owing under the 2007 contract is $46,283.46 (MSJ at Ex. P and exhibits A-C) but, in its reply, that it is $45,177.93 (Pl. Reply Br. at 4).  We will oblige SuperMedia to file an affidavit to resolve this discrepancy and attest to the correct amount due under the 2007 contract so that we may amend our Judgment here.

contest this motion for summary judgment was either not pursued timely or is already in its possession.  Id. at 8.  AEI has been given ample opportunity for discovery.  We will deny this untimely motion, which in any case falls far short of the affidavit or declaration the Federal Rules require to reopen discovery.

AEI does, however, continue to contest the validity of Morley's signature on the 2008 contract.  Despite SuperMedia's reliance on a handwriting expert, the validity of the 2008 agreement is a genuine issue of material fact as is the $52, 527.25 SuperMedia claims is due under that contract, see Pl. MSJ at 9.  Accordingly, we cannot grant SuperMedia's motion as to sums due under the disputed 2008 contract.

## V.    Conclusion

For the reasons stated above, we will deny AEI's motion to expedite response time for plaintiff to answer AEI's interrogatories and its motion for summary judgment.  We will grant SuperMedia's motion to strike AEI's effort to shoehorn an untimely expert opinion into the record.  As stated above, AEI shall show cause why we should not sanction it further by imposing as a sanction its adversary's legal fees associated with defending the discovery motion and opposing the untimely expert report.  AEI's stricken expert, J. Wright Leonard, shall explain to this Court by affidavit the circumstances under which she provided her letter and report.  And we will grant SuperMedia's motion in part, to the extent discussed above.

An appropriate Order and Judgment follow.

BY THE COURT:

/S/ STEWART DALZELL, J.

24